CHARLES A. CUTTER *vs.* NATHANIEL HAMLEN.
HARRIET A. CUTTER *vs.* SAME.
ERNEST B. CUTTER *vs.* SAME.
GUY V. CUTTER *vs.* SAME.
ALICE E. CUTTER *vs.* SAME.

Suffolk.    March 19, 1888. — October 19, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Survival of Action for Deceit — Personal Injuries — Lease of Dwelling infected by Diphtheria — Contributory Negligence — Evidence.*

An action for deceit in letting a dwelling-house infected with diphtheria, causing injuries to the person, survives by force of the Pub. Sts. c. 165, § 1.

At the trial of such an action there was evidence tending to show that the lessor knew that the child of a former tenant had died of diphtheria in the house, which subsequently was fumigated by and made satisfactory to the board of health; that he knew the drains to be in bad condition, as to which he misled the lessee by specific statements; and that the lessee did not know that there had been diphtheria in the house. There was also uncontradicted evidence that the lessee was warned at the time of the letting that the lessor was old, forgetful, and incapable, and that he was to deal only with the lessor's agent, as well as evidence which, it was contended, showed lack of due care on the part of the lessee. *Held*, that there was evidence for the jury that the lessor knew or ought to have known that there was special danger of infection from the drains, which he was bound to disclose to the lessee, and which he

was not warranted in assuming to be removed by the doings of the board of
health; and that the question of the lessee's contributory negligence was also
for the jury.

Evidence of the condition of the drains, when they were repaired seven months
after the lessee took possession, coupled with evidence of what had been done
in the mean time, was *held* admissible to show their condition at the time the
lease was made.

HOLMES, J. The first case is an action in two counts, the
first of which alleges, in substance, that, to induce the plaintiff to
hire a house, the defendant falsely represented that the drains,
etc. were in perfect order, and that "the house was sweet and
healthy"; that the plaintiff was induced by these representa-
tions to hire, and did hire, the house; that the drains were in
bad condition, and the house was unhealthy and infected with
diphtheria, all of which the defendant knew; and that the
plaintiff, by using the house, was made sick with diphtheria,
unable to pursue any business, and helpless for life. It also
alleges the illness, and the plaintiff's consequent loss of services,
of other members of the plaintiff's family, and the death of his
son. The second count alleges the dangerous condition of the
house, and that the defendant, to induce the plaintiff to occupy
the house, well knowing the facts alleged, negligently omitted to
inform the plaintiff, or to take any due precaution against the
exposure of the plaintiff to the disease, and concealed defend-
ant's knowledge of the same. Then follow allegations of the
plaintiff's ignorance, use of due care, entry into the house in-
duced by the defendant, and illness in consequence. The other
four cases are actions brought by the wife and children re-
spectively of the plaintiff in the first case, the declarations in
which contained in substance the same allegations. The de-
fendant died after the trial, and his executor appeared spe-
cially, and moved to dismiss the first case, on the ground that it
did not survive. The motion was overruled, and the executor
excepted.

If we assume, as is argued on behalf of the executor, that
both counts of the declaration are counts in deceit, it does not
follow that the action will not survive. It is settled in this
Commonwealth, that the provisions of the Pub. Sts. c. 165, § 1,
that actions for "damage done to real or personal estate" shall
survive, does not apply to mere impoverishing of a man's estate

generally, but requires that damage to some specific property should be alleged and proved. *Read* v. *Hatch*, 19 Pick. 47. *Leggate* v. *Moulton*, 115 Mass. 552. In England a more liberal rule seems to have been established. *Twycross* v. *Grant*, 4 C. P. D. 40. But *Leggate* v. *Moulton* implies, as plainly as the English cases decide, that an action for injury to specific property — and by the same reasoning under our statute an action for injury to the person — will survive as well when the wrong is brought to pass by fraud as when it is done by force. See *Hatchard* v. *Mège*, 18 Q. B. D. 771; *Oakey* v. *Dalton*, 35 Ch. D. 700.

In such cases the action is not for the deceit alone, the naked *injuria*, but for the damage caused by the deceit. The nature of the damage sued for, not the nature of its cause, determines whether the action survives.

In *Norton* v. *Sewall*, 106 Mass. 143, an action was held to survive to an administratrix for personal injuries to her intestate, caused by a dose of poison given by a third person, to whom the defendant negligently sold the poison as a harmless medicine. Plainly, so far as the present question goes, the defendant in that case would have stood no better if he had committed an intentional fraud. Plainly, too, the connection between the cause and the effect, if that had anything to do with the question, is at least as close in the present case as in *Norton* v. *Sewall*.

It is true that it was held in *Cutting* v. *Tower*, 14 Gray, 183, that an action for deceit in selling poisoned grain, whereby the purchaser's horses were killed, did not survive to his administrator. It might perhaps be argued, that, although inducing the plaintiff to use the house would have been a substantive tort but for the intervention of a contractual relation between him and the testator through the lease, that relation reduced the tort to a mere incident of the fraud in making the contract, and that this view would reconcile *Cutting* v. *Tower* with *Norton* v. *Sewall*. We do not understand the explanation of *Cutting* v. *Tower*, offered in *Norton* v. *Sewall*, to turn on the fact that the fraud was incident to a sale, but on the ground that the damage to the plaintiff's horses by eating the poisoned meal sold him was alleged only by way of aggravation of the damage claimed for

fraud in the sale. It is unnecessary to inquire whether we should have construed the declaration in *Cutting* v. *Tower* the same way. It is enough to say, that whether the statute touching the survival of actions is to be construed strictly, as is said in *Cutting* v. *Tower*, or very liberally as the English statutes have been construed, (*Twycross* v. *Grant*, 4 C. P. D. 40, 45,) we are to look at the substance of the matter. See *Pulling* v. *Great Eastern Railway*, 9 Q. B. D. 110. The substance of the complaint for damages caused the plaintiff's person by fraud is the same when the trap is baited with a lease, as when he is led into it by a simple invitation. Nor is it plain why the wrong to the person should be reduced to an incident of the other tort, merely because the latter is one of the steps by which the former is accomplished.

We come now to the case presented by the evidence. The ground mainly relied on is, that, eight months before the plaintiff in the first case took the house, and with his family entered into occupation of it, the child of a former tenant died there of diphtheria, and that this fact was not disclosed to the plaintiff. We cannot say that there was no evidence that the landlord knew of the death, but we are disposed to assume that he also knew that soon after the death the house was fumigated under the direction of the board of health, and that the measures usually taken in such cases were taken, and that one of the inspectors had indorsed " O. K." on a report concerning the premises, which was explained in evidence to mean that the premises had been made in all respects satisfactory to the board of health. If the case stopped there, we should be of opinion that the landlord was justified in assuming that the house had been disinfected, and that the requirements of *Minor* v. *Sharon*, 112 Mass. 477, were satisfied. It is settled that a landlord may be liable for not disclosing a concealed source of danger, known by him to be such, and not discoverable by the tenant. *Minor* v. *Sharon*, *ubi supra*. *Cowen* v. *Sunderland*, 145 Mass. 363. But it is not enough that the landlord knows of the source of danger, unless also he knows, or common experience shows, that it is dangerous. He is bound at his peril to know the teachings of common experience, but he is not bound to foresee results of which common experience would not warn him, and which only a specialist

would apprehend. *Bowe* v. *Hunking*, 135 Mass. 380. *Commonwealth* v. *Pierce*, 138 Mass. 165, 179.

There was evidence that the condition of the drains was known by the landlord to be bad. If this evidence, again, stood alone, we should have great difficulty in saying that there was anything to go to the jury. The general rule between landlord and tenant, as well as between buyer and seller, is *caveat emptor*. *Bowe* v. *Hunking, ubi supra.* And this rule cannot be eluded by showing that the tenant did not know of a defect, that the landlord did, and then asking a jury to pronounce it a secret source of danger. Everybody knows that houses in a city have drains, and that drains are liable to get out of order, or to prove unsatisfactory. The possibility is manifest, and there is strong ground for requiring the tenant to insist on a warranty, if he does not wish to take the risk.

But when we put together the facts that there had been diphtheria in the house, and that the drains were defective, we can hardly say that the jury might not have been warranted in finding that the defendant knew, or ought to have known, as a prudent man, that this combination of circumstances introduced a special danger of infection from the drains, and that he was not warranted in assuming that this peculiar danger was removed by what the board of health had done. Moreover, there was some evidence that the plaintiff was misled by specific statements as to the condition of the drainage. In view of the uncontradicted testimony, that the plaintiff was warned that the landlord was old, forgetful, and incapable, and that the plaintiff was not to deal with him but with his son, we hardly can think that the charge of fraud was persisted in, but we cannot say that the plaintiff was not entitled to argue it if he saw fit. The request for a ruling that there was no evidence for the jury must be taken to refer to the effect of the evidence actually put in, irrespective of the pleadings. As the judge who heard the evidence thought that the plaintiff ought to be allowed to go to the jury, we cannot say that he was wrong.

The question whether the plaintiff was guilty of contributory negligence was for the jury. The evidence was that he did not know of the diphtheria having been in the house, and the jury may have found that that was what made the drains dangerous.

Evidence of the condition of the drains, in respect of traps, etc., when they were repaired some months after the plaintiff's taking possession, when coupled with evidence of what had been done in the mean time, was admissible to show their condition at the time when the lease was made. *Brooks* v. *Petersham*, 16 Gray, 181.                    *Exceptions overruled.*

*L. S. Dabney & F. Rackemann*, for the defendant and his executor.

*S. J. Thomas & M. O. Adams*, for the plaintiffs.