[Finney v. Steele.]

# Finney *v.* Steele.

*Action for Damages for Communicating Infectious Diseases by Leasing Infected House.*

(Decided July 6th, 1906.   41 So. Rep. 976.)

*Landlord and Tenant; Dangerous Condition of Premises; Liability of Landlord.*—Defendant leased to plaintiff a house in which a person infected with a contagious disease had been, and plaintiff's infant child became infected with such contagious disease.   Before leasing the house, defendant employed a skilled physician to disinfect the premises, and a skilled nurse performed the duty under the direction of the physician. Held, the landlord was not liable for injuries sustained by the tenant although other experts gave it as their opinion that there were better means of disinfection than those used in this case.

APPEAL from Madison Circuit Court.

Heard before HON. PAUL SPEAKE.

This is an action begun by Finney against Steele to recover damages occasioned by the sickness of the child of plaintiff, alleged to have been occasioned by infection in the leased premises.   The facts are sufficiently stated in the opinion of the court.

COOPER & FOSTER, for appellant.

KING & BANKHEAD, for appellee.

SIMPSON, J.—This suit was brought by the appellant against the appellee claiming damages by reason of the fact that the defendant leased to the plaintiff a certain house, in which there had been a person infected with a contagious disease known as "scarlet fever," from which said house had become infected, and the plaintiff claims that the defendant concealed from the plaintiff the fact that said house had been so infected, and that as a result plaintiff's infant daughter became

infected with such disease, had a spell of sickness therefrom, and still suffers from the results. The damages are claimed for the actual expense, the deprivation of the services, companionship, etc., of his daughter and for mental pain and anxiety resulting to plaintiff from said sickness.

In addition to the legal points made on the pleading, the general defense was that although it was proved that there had been a case of scarlet fever in said house, yet, before leasing the premises to the plaintiff, the defendant had employed a skilled physician to have said premises thoroughly fumigated and disinfected, that it was fumigated by a skilled nurse under the direction of said physician, and the report made to plaintiff that it was disinfected before he leased it to the plaintiff. There was no dispute about the fact that scarlet fever is an infectious and contagious disease, that there had been a case of it in said house, and that the plaintiff's daughter after moving into said house had said fever. It was proved that, by direction of the defendant, Dr. H. D. Westmoreland, who was a physician of 8 or 10 years' practice, had given directions to Martha M. Gullette, who was a nurse of experience and skill, to disinfect the house; that said Martha M. Gullette was instructed to disinfect with sulphur and bichloride of mercury, that she burned the sulphur in the house for 24 hours, and used 1-500 bichloride of mercury; that she had had experience with this and other infectious diseases at the Charity Hospital in New Orleans, and other places, that she considered the house free from contagion when she finished the fumigation; that the bathroom was fumigated by burning sulphur, and the walls and bath tub sprayed and washed with said bichloride of mercury. Said nurse testified that she washed the floor of the room where the patient had had scarlet fever after sweeping it, but could not say whether she scoured it, and that the floor was sprayed with bichloride of mercury; that she did not remember whether she removed the window shades or not, that she did not remove the paper from the walls, that she had never known of any contagion remaining in a room fumigated as she did this one. It was shown that the doctor and the nurse reported to the

[Finney v. Steele.]

defendant that the house had been disinfected. The plaintiff himself testified that the bedroom in question was strewn with papers and other litter when he went to examine the house, and the bathroom very dirty, and that there was a tissue paper ornament hanging on the gas fixture in the middle of the room. There was a conflict between the testimony of the plaintiff and that of the defendant as to whether the defendant did tell the plaintiff that there had been a case of scarlet fever in the house. Plaintiff introduced physicians as expert witnesses who testified that in order to thoroughly disinfect a house in which there had been scarlet fever, it was necessary to remove the wall paper and scrape the walls, or wash them thoroughly with a solution of bichloride of mercury formaldehyde; that all hangings, such as shades and curtains, should be burned, or thoroughly boiled, the floors thoroughly scoured with a strong solution of bichloride of mercury, and the mattress and bedding burned. That sulphur fumigation was of doubtful efficiency, and was never relied upon by the profession since the discovery of formaldehyde, that while 1-500 solution of bichloride of mercury was sometimes used, he considered 1-250 better. That sulphur and bichloride of mercury had been used for disinfection for almost a century, and formaldehyde was of more recent use and considered more efficacious.

While one who rents or leases a house to another does not thereby warrant the condition of the premises unless specially mentioned, the doctrine of caveat emptor applying, yet if there are defects known to the owner, rendering the premises unsafe, either from unseen dangers otherwise or from infection, the owner who conceals such dangers, and fails to communicate the knowledge of the same to the party to whom the premises are leased, he being ignorant thereof, is liable to the lessee for any damages resulting therefrom. The cases base the liability variously on fraudulent concealment, on the breach of the duty which the relation implies, etc., but not upon the principle of an implied warranty. Hence, great stress is laid in the cases referred to by appellant and others, on the necessity of knowledge of the defect or infection, in order to fix the liability on the lessor.—

*Minor v. Sharon,* 112 Mass. 477, 487, 17 Am. Rep. 122; note to same case in 17 Am. Rep. 127; *Cesar v. Karutz,* 60 N. Y. 229, 19 Am. Rep. 164; *Coke v. Gutkese,* 80 Ky. 598, 44 Am. Rep. 499; *Booth v. Merriam,* (Mass.) 30 N. E. 85.

In another case in the supreme court of Massachusetts, in which a party leased premises on which there was a vault emitting offensive and dangerous odors, and had employed his own servant to throw lime in, and nail boards over the vault, the court says that it is not enough that the landlord knows of the source of the danger unless also he knows, or common experience shows that it is dangerous. He is bound at his peril to know the teachings of common experience, but he is not bound to forsee results of which common experience would not warn him, and which only a specialist would apprehend (citing a number of cases.) The court goes on to hold that if the defendant knew the vault was dangerous, and by his own servant undertook to remedy it by "means which were ineffectual for that purpose, and which he knew, or ought to have known were ineffectual, he cannot escape liability by employing a servant to do the work," because he was responsible for the act of his servant. The court also refers to a previous case in which a man, over whose hay white lead had been spilled, undertook himself to separate it, and sold some of the hay which proved injurious, and it was held that he was liable because his belief in the success of his remedy was merely conjectural and uncertain.—*Martin v. Richards,* (Mass.) 29 N. E. 591, 593.

The supreme court of Tennessee, after a thorough examination of this subject, thus summarizes the result: "We think the great weight of authority is that if a landlord lease premises which are at the time in an unsafe and dangerous condition, he will be liable to his tenant for damages that may result, if he knows the fact and conceals it, or if by reasonable care and diligence he could have known of such dangerous and unsafe condition, provided, reasonable care and diligence is exercised by the tenant on his part," (citing a number of authorities). The court proceeds to remark that "the liability does not arise upon any question of contract, but upon

the obligation to the tenant not to expose him to danger of which the landlord knows, or could.know by reasonable care."—*Hines v. Wilcox,* 96 Tenn. 148, 33 S. W. 914, 34 L. R. A. 824, 832, 54 Am. St. Rep. 823, 830. The court reaffirmed this case on application for rehearing in which it is said that the rule imposes reasonable care, etc., page 831 of 54 Am. St. Rep. (96 Tenn. 328, 34 S. W. 420). We do not commit ourselves to going as far as this case does, but cite it as stating the doctrine in its strongest light in making the landlord liable not only for failing to make known defects that are known, but also making him responsible for those he could have discovered by reasonable care and diligence.

In the case of *Cutter v. Hamlen,* (Mass.) 18 N. E. 397, 1 L. R. A. 429, the landlord was sued for damages resulting from his having rented a house infected with diphtheria, and having defective drains. There was evidence that the house had been fumigated by the board of health, and indorsed O. K. by the inspector, and the court says: "If the case stopped there, we should be of opinion that the landlord was justified in assuming that the house had been disinfected, and that the requirements of *Minor v. Sharon, supra,* were satisfied."—Page 398 of 18 N. E. (1 L. R. A. 429). But as there was the additional defect that the drains were known to be defective, and also that there were specific statements, the matter was.held to properly have been submitted to the jury.—Page 399 of 18 N. E. (1 L. R. A. 429).

In the case now under consideration, the only defect suggested was that there had been a case of scarlet fever in the house. It was shown without contradiction, that the.disinfecting of the house was intrusted by the owner to an experienced physician and a trained, experienced, and competent nurse. While there is testimony by other experts giving their opinion that there were better means of disinfection than were used, yet there is not a word of testimony questioning the experience or competency of the physician and nurse to whom the work of disinfecting the house was committed. Dr. Wheeler, the health officer, testified that when infectious diseases were in any house, it was the duty of "the attending physician and the head of the family, or the owner of the

premises" to report the matter to him, which was not done when the first-named case occurred in this house. But he further testified that the health officer never disinfected premises where the attending physician attended to this. Dr. Westmoreland was the attending physician in this case. Under this state of facts, and the authorities above cited, we think the defendant would have been entitled to the general charge in his favor on this case. Hence, it is not necessary to go into an examination of the questions raised on pleading and evidence.

The judgment of the court is affirmed.

WEAKLEY, C. J., and TYSON and ANDERSON, JJ., concur.