WOOD, Appellant, *v.* WEHR, Respondent.

(No. 6,862.)

(Submitted December 12, 1931.   Decided January 15, 1932.)

[6 Pac. (2d) 1105.]

*Mr. Harry H. Parsons* and *Mr. E. C. Kurtz,* for Appellant.

*Messrs. O'Hara, Madeen & Grant, Mr. Walter L. Pope* and *Mr. J. C. Garlington,* for Respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action to recover $450, with interest, as the agreed rental for certain land owned by him in Ravalli county which he leased to defendant from August to November, 1929.

Defendant by answer admitted the allegations of the complaint and set forth a counterclaim, in which he alleged that he leased the land for pasturing his sheep; that the land, "as the plaintiff well knew or by the use of ordinary care should have known, had been in previous years occupied, used and grazed by sheep infected with lip and leg ulceration, commonly known as foot rot, and that the defendant did not know that this land had been so grazed and infected, and, as a result thereof, said land so let to the defendant was tainted and affected with said disease and the same was made dangerous and unfit for pasturing purposes for the defendant's sheep; that the said foot rot is a contagious and infectious disease dangerous to life and health of sheep, which the plaintiff well knew or, by the exercise of ordinary care, he could or should have known"; that plaintiff omitted to inform him of the con-

dition of the land and defendant's sheep became infected, resulting in damages in the alleged sum of $1,550.

The reply put in issue the allegations of the counterclaim. The cause was tried to the court sitting with a jury. The jury found for defendant in the sum of "$645, less $450, viz. $195." Plaintiff has appealed from the judgment entered on the verdict.

Numerous assignments of error are made, but as we view the record but one question, the sufficiency of the evidence, raised by plaintiff's motion for a directed verdict, requires consideration.

As noted from the allegations of the answer, there is no claim of any misrepresentation of the character of the land by plaintiff, but the relief demanded in the counterclaim is based solely on plaintiff's failure to disclose to defendant the fact that his land was infected with the disease complained of. The evidence tends to show that defendant's sheep were healthy when they were moved on to plaintiff's land on August 6, 1929. About a week later they were found to be afflicted with the disease known as "lip and leg ulceration," and also known as "foot rot," and were placed under quarantine by Dr. Kilpatrick, deputy state veterinarian of the Montana livestock board, who examined the sheep in the summer of 1929 while on the land leased by defendant from plaintiff. The record shows that the disease is one that develops in the feet and extends to the lips and mouth when the sheep licks its feet, and thus brings its mouth in contact with the feet.

There was ample evidence to show that defendant was damaged to the extent indicated by the verdict. The determinative question is whether there was any evidence sufficient to warrant submission of the case to the jury on the issue whether plaintiff at the time of leasing the land knew, or in the exercise of reasonable care ought to have known, that the land was infected with the disease.

The rule of law applicable is that "where a landlord with knowledge lets premises infected with a contagious or infectious disease, and fails to inform the tenant thereof, he will

be liable to him for injuries resulting therefrom." (36 C. J. 207. And see Tiffany on Landlord and Tenant, sec. 86, p. 562; *Leech* v. *Husbands*, (Del. Super.) 152 Atl. 729; *Davis* v. *Smith*, 26 R. I. 129, 106 Am. St. Rep. 691, 3 Ann. Cas. 832, 66 L. R. A. 478, 58 Atl. 630; *Finney* v. *Steele*, 148 Ala. 197, 12 Ann. Cas. 510, 6 L. R. A. (n. s.) 977, 41 South. 976; *Kutchera* v. *Graft*, 191 Iowa, 1200, 26 A. L. R. 1257, 184 N. W. 297.)

It will be noted from some of the above cases that actual knowledge on the part of the landlord of the infection on the premises is essential before liability attaches for failure to make the disclosure to the tenant. But the jury here was instructed without objection, that it was sufficient if plaintiff, in the exercise of ordinary care, ought to have known of the infection, and, for the purposes of this case, we need not stop to consider whether the instruction was more favorable to defendant than he was entitled to. We shall consider the question only as to whether the verdict is supported by the evidence in the light of the law as given by the instructions.

There is evidence that in 1926 and 1927 plaintiff had sheep on this land which became lame and the feet of which festered. Plaintiff and his herder Clark thought it was the hay stubble that caused the injuries; they treated the sores with a fluid. Plaintiff talked with Dr. Kilpatrick about the condition of the sheep, but he was not sure what solution he prescribed for their treatment. Plaintiff said that his sheep never had anything wrong with their lips or mouths. It was simply sore feet. He fixed up a trough and drove the sheep through it with a solution of vitriol in the trough, which was shown to be the usual treatment for foot rot. He said he did this before consulting a veterinarian. After consulting Dr. Kilpatrick, and receiving the suggestion from him that it might be the lip and leg disease, plaintiff examined the lips of his sheep and found no sore lips; the treatments he gave them cured their feet. He said: "I did not know of any sheep being on my land at all at any time during the twenty-five

years I was there, except the sheep of Mr. Wehr, that were affected with foot rot or ulcers in their mouths."

Charles Norman leased the same land from plaintiff in 1928 for grazing sheep, and there is evidence that they contracted the lip and foot disease; but Norman testified: "I do not know whether Mr. Wood knew my sheep were affected with that." Of this plaintiff said: "I do not know anything about Mr. Norman having foot and mouth trouble with his sheep; I never knew he had them in a corral to treat them."

Johnnie Schramm put his sheep on the land after defendant had removed his, and they did not contract the disease.

De Mott had his sheep on the land in October, 1928, and throughout the winter and until he put them on the spring range in the spring of 1929, and they did not contract the disease.

When plaintiff described the condition of his sheep to Dr. Kilpatrick, the latter presumed it "was foot rot." Dr. Kilpatrick, in testifying concerning this, said: "This was so long ago I cannot remember the exact circumstances, but if I advised the vitriol or acid treatment, I believe that I must have thought that the condition was the foot rot." Dr. Kilpatrick did not say whether he so advised plaintiff, and the only testimony on that point is that of plaintiff, who said: "I do not know what Mr. Kilpatrick thought from what I told him; I told him I had some lame sheep."

Defendant testified that he talked with plaintiff about the condition of defendant's sheep after they were diseased, and said: "We spoke of the sheep being lame and then he [plaintiff] told me of what he had done when his sheep had that disease; that is the very word he spoke it in. I cannot recall just what he said; he said his sheep had sore feet and that he had treated them with acid, blue moss is really what it is; he told me to use some nitric acid and blue vitriol solution." Defendant's wife testified that she overheard this conversation. Defendant also said that, so far as he knew, plaintiff had never seen defendant's sheep.

If the foregoing evidence be assumed sufficient to warrant a finding that defendant's sheep contracted the disease on plaintiff's land, can it be said that it was sufficient to go to the jury on the issue whether plaintiff knew, or in the exercise of ordinary care should have known, that his land was infected with a contagious and infectious disease at the time of leasing the land to defendant? There is no evidence to warrant a finding that his own sheep were afflicted with the disease in 1926 and 1927. There is nothing in the record to indicate that there was anything wrong with their mouths or lips. Dr. Kilpatrick, defendant's witness, stated that it was simply lameness or sore feet which plaintiff complained of to him, and they did not, according to the undisputed evidence, have any lip or mouth ailment. Plaintiff's statement to defendant and Mrs. Wehr as to how he treated his sheep when they had "that disease" must, in view of the record, be held to relate to an ailment other than the disease here complained of. There is nothing in the record to indicate that plaintiff knew at that time what disease defendant's sheep were afflicted with. He was simply told by defendant, according to the latter's own testimony, that they were lame. Hence, if plaintiff's sheep did not have the disease, there is no evidence from which it can be said that he knew, or in the exercise of ordinary care should have known, that his land was infected with it. Also, if plaintiff's sheep did have the disease in 1926 and 1927, can it be said that plaintiff, in the exercise of ordinary care, should have known that his land was infected in 1929? He had no knowledge that Norman's sheep contracted the disease in 1928. De Mott's sheep had been on the land after 1927 and before 1929, and they did not contract the disease.

From all that appears in the record, the land was exposed to the elements, and even though the land was infected in 1927, to plaintiff's knowledge, can it be said that he failed to use ordinary care toward defendant, in 1929, under the circumstances here shown? Defendant's witness Kilpatrick, who fur-

nished the only evidence regarding the duration of the life of germs from which this disease originates, testified that he made no examination of the soil to see if it possessed any germs. He said: "Land that is not exposed to the elements, and sheep running over it the previous year, I would say that there was a very good chance for infection the succeeding year. * * * In real cold weather there would not be the possibility of infection that there would be in the warmer weather. * * * The necro bacillus is the germ that causes this disease. * * * Under favorable conditions that germ will last a long time, I would say for a period of a year or two; that is just an estimate on my part, not a matter of actual knowledge. I have never tested the life of one so I could tell." He said, "I do not know how often this bacilli germinates; I think they are probably seasonal."

There is not any evidence that plaintiff actually knew, or in the exercise of ordinary care should have known, that his land was infected in 1929, even assuming that he should have known that it was in 1927. Even Dr. Kilpatrick, who had special knowledge on the subject, could not state definitely how long these germs retain life. He estimated that the germ would last a year or two. But is there any basis upon which to say that plaintiff, as a reasonably prudent man, must have known this? We think not.

A landlord "is bound at his peril to know the teachings of ▮ common experience, but he is not bound to foresee results of which common experience would not warn him, and which only a specialist would apprehend." (*Cutter* v. *Hamlen,* 147 Mass. 471, 1 L. R. A. 429, 18 N. E. 397, 398.) The record is barren of any evidence as to how long common experience teaches that premises once infected with this disease will continue in that condition.

There was not sufficient evidence upon which to justify a verdict for defendant. The court should have sustained plaintiff's motion for a directed verdict made at the conclusion of all of the evidence.

The judgment is reversed and the cause remanded, with direction to enter judgment for plaintiff in accordance with the prayer of his complaint.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.