ity of the paint, which is the principal question to be tried, and it is stated that it will be shown by nine of them that they have purchased or used paint identical with the paint in question. It is not pretended that any of these nine witnesses ever saw or had any of the paint which was shipped to the defendant, but that they had purchased or used paint manufactured by the defendant and shipped to others. It is not apparent how they could know anything concerning the paint in question. Two only of the defendant's witnesses are shown to be in a position to give material evidence on the issues involved here, one of whom, it is claimed, went to Syracuse and purchased from the defendant a portion of the paint which it received from the Tropical Oil Company, and another that he formerly worked for that company, and that he was familiar with the composition and manufacture of the paint in question. They are, therefore, material witnesses on the question of quality.

This being the situation, there is no preponderance in the number of material witnesses in favor of the plaintiff over those of the defendant. All the transactions took place in Onondaga county. This sales agent, who is now the plaintiff, and the defendant, made the contract there, and the paint was delivered there. Such of it as had been sold has been used there. If the claim had not been assigned to the plaintiff, the action would necessarily have been required to be brought there. Under such circumstances, we think the action should be tried there.

The order should be reversed with $10 costs and disbursements, and motion granted, with $10 costs to abide the event.

---

### HEILBRUN v. AARONSON.

(Supreme Court, Appellate Term, First Department. February 15, 1909.)

1. LANDLORD AND TENANT (§ 178*)—CONSTRUCTIVE EVICTION—WAIVER BY RETAINING PREMISES.

Where a tenant took possession of premises in September, and, though bad odors which filled the apartment were immediately present, and dampness arose as soon as steam heat was turned on, remained in possession until the last of the following April, he waived the right to claim a constructive eviction by reason of the odors and dampness.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 713; Dec. Dig. § 178.*]

2. LANDLORD AND TENANT (§ 178*)—CONSTRUCTIVE EVICTION—WAIVER BY RETAINING PREMISES.

If the fact that the tenant's child fell sick in January would have any bearing on the question of his waiver, it would not avail him where he did not vacate upon the child's complete recovery nor until a month after it appeared that the child could be safely moved, and no reason was shown why he did not avail himself of his claim of constructive eviction before January.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 713; Dec. Dig. § 178.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** LANDLORD AND TENANT (§ 178*)—CONSTRUCTIVE EVICTION—WAIVER BY RE-
TAINING PREMISES.

Where a tenant, claiming that premises were infested by noisome odors,
mildly complained to the landlord during the first month of his occupancy
in September, and appeared to be satisfied by the landlord's answer that
he had instructed the janitor to attend to the matter, and did not again
complain until the following February, when he wrote the landlord setting
forth some of his complaints, his conduct did not show a forbearance to
exercise his right to claim a constructive eviction on account of the con-
dition pending an effort on his or the landlord's part to restore the prem-
ises to a proper condition, which would not have operated to preclude his
right to such claim.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §
713; Dec. Dig. § 178.*]

Appeal from Municipal Court, Borough of Manhattan, Fifth Dis-
trict.

Action by Monroe E. Heilbrun against Joseph Aaronson. Judgment
for plaintiff and defendant appeals. Affirmed on the opinion of the
court below.

The opinion of Spiegelberg, J., in the lower court, was as follows:

At the close of the trial the court held that, upon the uncontradicted facts,
the defendant had made out the defense of constructive eviction, but reserved
decision on the question whether he had removed from the premises in time to
avail himself of that defense. The lease in question ran for one year, be-
ginning October 1, 1907, but it appears that the defendant went into posses-
sion some time in the beginning of September, 1907. The causes of the defend-
ant's complaints were the noisome odors which filled the apartment, and damp-
ness, evidently due to a defect in the pipes. The bad odors commenced im-
mediately when the defendant moved into the premises, and the dampness as
soon as the steam heat was turned on, some time in November. Taking the testi-
mony of the defendant and the witnesses called on his behalf, it leaves very
little doubt that he was deprived of that degree of comfort to which he and
his family were justly entitled. Although there was no direct proof that the
bad odors and the dampness were the result of defective plumbing, there is
sufficient evidence in the case to conclude that that was the real cause. The
plaintiff did not meet the testimony introduced on behalf of the defendant,
but rested his case upon the proposition that the defendant had waived what-
ever right he had by remaining in the premises until the last day of April.
I am constrained to agree with the plaintiff's contention. While it would ap-
pear from the evidence given by the defendant and his witnesses that life in
the apartment was well-nigh unbearable, notwithstanding that fact the defend-
ant and his family remained there for a period of more than seven months, a
fact which in itself almost negatives the plea of uninhabitability.

Mr. Justice O'Gorman, writing the opinion in Seaboard Realty Co. v. Fuller,
33 Misc. Rep. 109, 67 N. Y. Supp. 146, says: "The retention of the premises
for such a period [five months] after the commencement of the alleged an-
noyances was a confirmation of the tenancy, and must be treated as an election
by the tenant to perform the covenants of the lease and to retain its benefits."
In Kent v. Ward (Sup.) 111 N. Y. Supp. 743, Mr. Justice MacLean says: "As-
suming the facts disclosed a constructive eviction by the landlord, might he
remain in possession for the first six months of the term, and then in the
spring, a convenient season for moving, abandon the premises as of right; for,
where the right to abandon premises exists, the tenant must remove with rea-
sonable promptitude after the circumstance constituting and creating the evic-
tion arises, and if he fails to do so his right to repudiate the hiring is lost."
It is significant that the defendant in this case, immediately upon vacating the
premises in question, moved to the country.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Stein v. Rice, 23 Misc. Rep. 348, 51 N. Y. Supp. 320, it was held that a period of six weeks constituted a waiver of the alleged constructive eviction by the landlord; and in Ernst v. Wheatley (Sup.) 93 N. Y. Supp. 1116, the Appellate Term held that the tenant could not claim that the premises were uninhabitable where he remained for 20 days after the conditions complained of had begun. The defendant seeks to overcome the force of this objection by proving that one of his children fell sick on January 2, 1908, and that, therefore, he was unable to remove from the premises until the day when he actually did. Assuming that this plea can in any event be raised, the physician who treated the child testified that it could be removed without endangering its health at the beginning of April. The evidence as to the severity of the child's sickness is rather inconclusive; but, be this as it may, the premises were not vacated upon the child's complete recovery, nor is there any reason given why the defendant did not avail himself of his claim of constructive eviction by the landlord before January 2, 1908. The correspondence introduced in evidence does not bear out the defendant's version as to the aggravated conditions existing in the premises, nor does it show that he was very insistent in demanding from the landlord a redress of the intolerable evils. If he had insisted upon his right to have the defects cured, and remained in possession of the apartment while the landlord attempted to cure them, such forbearance on his part should not be taken advantage of by the landlord. In Lathers v. Coates, 18 Misc. Rep. 231, 41 N. Y. Supp. 373, where the tenant was relieved from the obligations of the lease, the odors first became noticeable in November or early in December, and the removal from the premises did not take place until the middle of February, but in that case the tenant had exhausted all the remedies at his disposal to cure the defects, and, in fact, the board of health was called in to make an examination of the plumbing. It does not appear that anything of that kind was done in this case. In September, 1907, the defendant mildly communicated some of his grievances to the landlord, and seemed to have been satisfied with the answer of the landlord that he had given the janitor instructions to attend to the matter. It was not until February 11, 1908, that the defendant again sought redress by again writing a letter to the landlord setting forth some of his complaints. These letters cannot be considered a forbearance on the part of the tenant to exercise his rights pending an earnest effort on his or the landlord's part to restore the premises to a proper and habitable condition.

Upon all the facts of the case, I must hold that the defendant has waived his right to claim a constructive eviction by the landlord.

Judgment is directed for the plaintiff for the sum demanded in the complaint.

Argued before GILDERSLEEVE, P. J., and BISCHOFF and McLEAN, JJ.

Henry J. Goldsmith, for appellant.
Fixman & Lewis (Clarence M. Lewis, of counsel), for respondent.

PER CURIAM. Affirmed upon opinion of Mr. Justice Spiegelberg in court below.

---

PEOPLE ex rel. DUNCAN v. CLEMENT, State Excise Com'r.

(Supreme Court, Special Term, New York County. May 19, 1909.)

INTOXICATING LIQUORS (§ 97*)—REBATE ON SURRENDER OF CERTIFICATE.

Under section 25 of the liquor tax law (Laws 1896, p. 67, c. 112, as amended by Laws 1897, p. 225, c. 312, § 17), authorizing the surrender of a liquor tax certificate by one who has not violated the liquor law during the year and receipt of a rebate therefor, one surrendering a certificate after the conviction of his employé during the year of a violation of the liquor law is not entitled to a rebate, whether or not the certificate holder

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes