MURRAY, PLAINTIFF IN ERROR, v. ALBERTSON, DEFEND-
ANT IN ERROR.

1. On a demise of a house or lands there is no contract or condition im-
plied that the premises shall be fit and suitable for the use for which
the lessee requires them. Consequently, their unfitness for such a
purpose will not justify the tenant in abandoning the premises, and on
such grounds making defence to an action for rent, unless there has
been a fraudulent misrepresentation or concealment by the lessor as to
the state or condition of the premises, or the premises are unin-
habitable by reason of some wrongful act or default of the lessor.
2. The premises demised consisted of a house, with the furniture in it,
situate at a seaside resort. The letting was for a term of five months,
and by a lease under seal. The tenant abandoned the premises on
the ground that the cellar was in a damp and unhealthy condition by
reason of water that was in it. *Held,* that there being no false repre-
sentation or fraudulent concealment by the lessor, the tenant could
not set up the unhealthy condition of the cellar, and his abandonment
of the premises for that reason, as a defence to an action for rent.
3. *Smith* v. *Marrable,* 11 *M. & W.* 5, commented on; *Wilson* v. *Finch,* 2
*Exch. Div.* 336, disapproved.

On writ of error to the Monmouth Circuit.

For the plaintiff in error, *Frederick Parker.*

For the defendant in error, *R. T. & W. B. Stout.*

The opinion of the court was delivered by

DEPUE, J. This suit is an action upon a covenant for the
payment of rent. The lease is dated June 1st, 1886. The
premises demised were a house, with the furniture therein,
situate at Spring Lake, a seaside resort. The letting was for
the term of five months, beginning June 1st, and for the rent
of $325, payable in advance.

The defendant took possession June 3d, 1886, and after ten
days' occupation quit possession, giving notice thereof in
writing. He justified the abandonment of the premises, and
made defence against the recovery of the rent on the ground

that the cellar was in a damp and unhealthy condition by reason of water that was in it. The water was admitted into the cellar through a hole in the cement on the cellar floor, which had been made by a former tenant chopping wood.

The agreement for the lease was made by the defendant with one Potter, the agent of the plaintiff. There was no proof that either the plaintiff or his agent had knowledge of the condition of the cellar when the lease was made. Before the lease was signed the defendant inspected the house, but did not examine the cellar, although he might have examined it if he had chosen. There is no pretence that there was a false representation or fraudulent concealment with respect to the condition of the cellar. The only ground on which the defence can be maintained is that on the letting of a furnished house there is a condition implied that the premises shall be reasonably fit for habitation.

The trial judge overruled the defence and directed a verdict for the plaintiff.

The general doctrine of the law is that on a demise of a house or lands there is no contract or condition implied that the premises shall be fit and suitable for the use for which the lessee requires them, whether for habitation, occupation or cultivation, and consequently their unfitness for such a purpose will not justify the tenant in abandoning the premises, and on such grounds making defence to an action for rent. *Sutton* v. *Temple*, 12 *M. & W.* 52; *Hart* v. *Windsor*, *Id.* 68; *Manchester Bonded Warehouse* v. *Carr*, 5 *C. P. Div.* 507, 510; *Foster* v. *Peyser*, 9 *Cush.* 242; *Naumberg* v. *Young*, 15 *Vroom* 331, 344; 1 *Addison on Contracts* (8th ed.) 228.

In all cases where a tenant has been allowed upon suggestions of this kind to withdraw from the tenancy and refuse the payment of rent, there will be found to have been a fraudulent misrepresentation or concealment as to the state of the premises which were the subject of the letting, or else the premises proved to be uninhabitable by some wrongful act or default of the landlord himself. 1 *Taylor's Landlord and Tenant*, § 382. The contention is that where the premises

let are a furnished house there is an exception to the general rule. *Smith* v. *Marrable*, 11 *M. & W.* 5, and *Wilson* v. *Finch*, 2 *Exch. Div.* 336, are relied upon in support of this contention.

Smith *v.* Marrable was an action for the use and occupation of a furnished house. At the trial it appeared that when the tenant took possession, the beds in the house were infested with bugs. He quit the premises and sent the key to the plaintiffs. Lord Abinger admitted the defence, and the defendant had a verdict. On motion for a new trial in the Court of Exchequer, the verdict was sustained. Baron Parke, in delivering the opinion of the court, stated the question to be whether in point of law a person who lets a house must be taken to let it in a state fit for decent and comfortable habitation, and whether the tenant is at liberty to throw it up when he makes the discovery that it is not so; and on the authority of two Nisi Prius cases—*Edwards* v. *Etherington*, *Ry. & M.* 268, and *Collins* v. *Barrow*, 1 *M. & Rob.* 112—held that where the demised premises are encumbered with a nuisance of so serious a nature that a person could not reasonably be expected to live in them, the tenant is at liberty to abandon them. The learned judge put his conclusion not on the ground of a contract on the part of the landlord that the premises were free from a nuisance. He expressly disclaimed the idea that there was such a contract, and rested his opinion upon the implied condition of law that there was an undertaking to let them in a habitable condition.

Smith *v.* Marrable was decided in January, 1843. In November of the same year the question was again in the same court in *Sutton* v. *Temple*, 12 *M. & W.* 52. The demise was of the use of certain pasture land and the eatage of grass thereon growing. The tenant took possession and put his cattle on the premises. In consequence of the spread of manure in the preceding spring, in which there was a quantity of refuse paint, particles of the paint had been deposited among the grass, from the effects of which some of the tenant's cattle died. He refused to stock the pasture any longer and gave the landlord notice. In an action for the rent the de-

fendant contended that he was not liable, inasmuch as the
eatage was wholly unfit for the purpose for which it was
taken—the food of beasts. The defence was overruled. Smith
v. Marrable was distinguished. Lord Abinger, C. B., speak-
ing of that case, said that it was "the case of a contract of a
mixed nature—for the letting of a house and furniture at
Brighton; and every one knows that the furniture upon such
occasions forms the greater part of the value which the party
renting it gives for the house and its contents. In such a
case the contract is for a house and *furniture* fit for immediate
occupation; and can there be any doubt that if a party lets a
house, and the goods and chattels or the furniture it contains,
to another, that must be such furniture as is fit for the use of
the party who is to occupy the house?" The Chief Baron
then cited the instances of warranties of fitness or quality im-
plied on the hiring of goods and chattels and in the sale of
medicines to be administered to a patient. He concluded
that "on the same principle, if a party contract for the lease
of a house ready furnished, it is to be furnished in a proper
manner and so as to be fit for immediate occupation. *   *   *
The letting of the *goods and chattels*, as well as the house,
implies that the party who lets it so furnished is under an ob-
ligation to supply the other contracting party with whatever
goods and chattels may be fit for the use and occupation of
such a house according to its particular description, and suita-
ble in every respect for his use. *   *   *   I regard that case
[Smith v. Marrable] as being the case of a mixed contract for
the letting of goods and chattels involved with the letting of
a house, and in which the goods and chattels so supplied are
intended for a specific purpose." Baron Parke, in his opinion,
adopted the distinction made by the Chief Baron between
Smith v. Marrable and the case in hand, and likened the
former to the case of a ready-furnished room in a hotel, which
is hired on the understanding that it shall be reasonably fit
for immediate habitation. He added that "in such a case the
bargain is not so much for the house as the furniture, and it
is well understood that the house is to be supplied with fit

and proper furniture, and that if it be defective the landlord is bound to replace it." Gurney and Rolfe, BB., expressed doubts whether this distinction could be sustained, and the latter declared his preference to overrule Smith *b*. Marrable rather than to follow it in the present case.

In February, 1844, Smith *v.* Marrable was again under discussion in the Court of Exchequer, in *Hart* v. *Windsor,* 12 *M. & W.* 68. That was an action for rent, upon a lease under seal. The premises demised were "a messuage or tenement, or garden ground." In fact, the messuage demised was an unfurnished dwelling-house which the defendant leased for the purpose of habitation. The plea, which was fully proved, was that the said messuage or tenement was not in a proper state for habitation or dwelling therein; that the same was, at the time of the demise, in that state and condition that the defendant could not reasonably inhabit or dwell therein, and so continued, &c., by reason of the same being greatly infested, swarmed and overrun with bugs, by reason whereof the defendant quitted the premises, and gave notice, &c. The defendant on this plea had a verdict, but the court *in banc* ordered judgment for the plaintiff *non obstante veredicto* on the ground that the facts stated in the plea were no defence to the action. The opinion of the court was delivered by Baron Parke, and of course brought under consideration his judgment in Smith *v.* Marrable. On this subject the learned judge declared that the decision in that case could not be supported on the ground on which he had rested his judgment. He said that it was not necessary to decide in the case in hand whether Smith *v.* Marrable be law or not; that it was distinguishable from the present case on the ground it was put by Lord Abinger in Sutton *v.* Temple. But he declared it to be the unanimous opinion of the court that there is no contract, still less a condition, implied by law on the demise of real property, only that it is fit for the purpose for which it is let. He added that " the principles of the common law do not warrant such a position; and though in the case of a dwelling-house taken for habitation there is no apparent

injustice in inferring a contract of this nature, the same rule must apply to land taken for other purposes—for building upon, or for cultivation ; and there would be no limit to the inconvenience which would ensue. It is much better to leave the parties, in every case, to protect their interests themselves by proper stipulations ; and if they really mean a lease to be void by reason of any unfitness in the subject for the purpose intended, they should express that meaning."

Mr. Addison, commenting on Smith v. Marrable, says that contracts for the letting and hiring of ready-furnished houses and apartments are contracts of a mixed nature, partaking partly of the nature of a demise of realty and partly of a contract for the letting and hiring of movable chattels, and that the lessor is therefore, in contracts of this description, clothed with the duties and responsibilities resulting from contracts for the letting and hiring of chattels as well as those flowing from demises of realty simply. 1 *Addison on Contracts* (8th ed.) 293. If the dual nature of the duties of the lessor under such a letting be conceded, it is clear that upon principle the liability of the lessor in the transaction must be restricted to breaches in respect to such of the property let whereof the law implies the warranty. On a sale of chattels in possession a warranty of title is implied. On a sale of realty the law raises no such undertaking. If the transaction be a sale of realty and personalty combined, and for a gross sum, if title to the personalty should fail, the party might rescind the sale on the ground that the contract of purchase was entire. But it is inconceivable that by the association of personal property with realty a warranty would be implied for title to the realty, which the law never implies with respect to property of that description. Suppose a lease of a farm with the implements of husbandry upon it, or of a factory with the tools and implements used in it, it could not rationally be contended that because on the letting of chattels a warranty of fitness was implied, there would therefore arise a warranty that the farm was reasonably fit for cultivation or the factory suitable for the uses for which it was demised.

The ground on which Smith *v.* Marrable was sustained by Lord Abinger in Sutton *v.* Temple—the contract implied that the furniture let with the house shall be fit for the use and occupation of such a house, and suitable in every respect for use—makes the decision inapplicable to the present case. The defect complained of in this instance was not in the furniture, but in the condition of the house itself.

*Wilson* v. *Finch,* 2 *Exch. Div.* 336, is more directly in point with the circumstances of this case. The demise was of a furnished house in town from May 7th to July 31st, 1875. When the tenant was about to take possession it was discovered that the drains and cesspools were out of repair, from which noxious odors were emitted into the house. The tenant refused to occupy, and made the condition of the premises a defence to an action for rent. The Court of Exchequer sustained the defence. There was evidence in the case that pending the negotiations for the lease the tenant wrote to the landlord's agent making inquiries as to the state of the drains, and that the agent replied that the landlord believed the drainage to be in perfect order. This circumstance was adverted to in the opinions of Kelly, C. B., and Pollock, B. ; and Pollock, B., seemed inclined to rest his judgment on the ground that the defect was latent, and that the tenant might be held to have relied with reason on the assurance of the lessor as to the condition of the house. But all the judges placed the judgment actually given on the ground that where the letting was of a furnished house, the law implied that the house should in every respect be fit for habitation.

The judgment in Wilson *v.* Finch has no support from Smith *v.* Marrable, as explained by Lord Abinger in Sutton *v.* Temple. Its value as a precedent in exposition of the common law will depend upon the reasoning on which the judgment was rested. Chief Baron Kelly placed his judgment on the ground that both parties contemplated that the house should be ready for the tenant's occupation; that both parties intended that the house should be fit for occupation ; that is, that it should be reasonably healthy, and not dangerous to the lives

of those inhabiting it.    Baron Pollock assigned as the ground of his judgment that the lessor had not supplied to the tenant that which both parties intended he should supply.    Lord Justice Bramhall, in a more recent case, commenting on the opinion of Chief Baron Kelly, remarked that even if both parties had contemplated that which was imputed to them, it did not follow that they so " agreed."    *Robertson* v. *Amazon Tug Co.,* 7 *Q. B. Div.* 598, 604.    Indeed, this reasoning would raise an implied contract of that character on every letting where the parties acted in good faith.    In Sutton *v.* Temple the lessee expected to have the eatage of the grass he bargained for; and in Hart *v.* Windsor the tenant expected to have the use of the house he rented for comfortable occupation as a dwelling.    In each case the lessor was aware of such expectation and contemplated that it should be realized.    And yet the court refused to create out of these expectations and the contemplations of the parties a contract by the lessor that the premises should be fit for such use or occupation.    In Hart *v.* Windsor, Baron Park held that the same rule must apply to dwelling-houses taken for habitation as to land taken for other purposes.    In this respect there is no distinction between the letting of a farm stocked with cattle for dairy purposes, or supplied with the implements of husbandry for cultivation, and the letting of a dwelling-house furnished for habitation.    The principles of the common law which do not warrant the implication of a contract for the fitness of the land or tenement demised from the act of letting, apply with equal force in both instances.

The defence was properly overruled, and the judgment should be affirmed.

*For affirmance* — THE CHANCELLOR, DEPUE, DIXON, REED, SCUDDER, VAN SYCKEL, BROWN, CLEMENT, MC-GREGOR, PATERSON.    10.

*For reversal*—None.