# THERESE L. GRIFFIN, Respondent, v. FAUN W. FREEBORN, Appellant.

## Kansas City Court of Appeals, May 18, 1914.

1. **LANDLORD AND TENANT: Fitness and Condition of Premises.** A written lease demised the property "in the present condition thereof." There was no clause requiring the house to be in any particular condition, nor any agreement to repair. Consequently in such case the tenant takes the premises as he finds them for there is no warranty implied in law on the part of the landlord that they are tenantable or even reasonably suitable for occupation. The rule of *caveat emptor* applies.

2. **————: ————: Liability for Defects or Dangers: Abandonment.** While the rule is that if there are hidden defects or dangers known to the landlord and unknown to the tenant, and which he could not discover by reasonable inspection, the landlord will be liable for any injury to the tenant resulting therefrom, yet the mere withholding of information as to the condition of the premises will not justify the tenant in abandoning the premises and in refusing to pay rent unless there is such concealment as to amount to fraud or deceit.

3. **————: Constructive Eviction.** While a tenant may be constructively evicted by the conduct of the landlord in creating or permitting the existence of nuisances in or about the premises, yet the landlord must in some way be responsible for such nuisance, that is by some act of his must have produced or brought it about, and the nuisance must be of a serious character, so intolerable as to involve a deprivation of the use of the leasehold. Vermin or noxious smells about the house do not constitute eviction so as to justify the abandonment of the premises by the tenant.

4. **————: ————: Must Abandon in a Reasonable Time.** Even if the circumstances complained of are such as to justify the tenant in abandoning the property and in claiming a constructive eviction, he must do so in a reasonable time after the circumstances arise which give him the right to abandon, and if he fails to do so, he loses the right.

5. **————: In Absence of Covenant no Duty on Landlord to Repair.** In the absence of an express agreement, the lessor is under no obligation to repair whether the need for repairs existed at the time the lease was made or arose afterward.

Appeal from Jackson Circuit Court.—*Hon. Frank G. Johnson*, Judge.

AFFIRMED.

*Pew & Proctor* for appellant.

(1) The rule is that while an eviction was originally a dispossession of the tenant by some agent of his landlord, or by failure of the latter's title, it has now come to include any wrongful act of the landlord, either of commission or omission, which may result in a substantial interference with the tenant's possession or enjoyment, in whole or in part. Delmar Investment Co. v. Blumenfield, 118 Mo. App. 308. (2) Although a lease be taken for a certain time at a certain rent, yet if the landlord wrongfully evicts the tenant, the latter will be absolved from that time on for the payment of rent. Phoenix Land & Imp. Co. v. Seidel, 135 Mo. App. 185. (3) Where the lessor by his wrongful acts defeats the enjoyment of the property by the lessee, the latter may abandon the possession and exonerate himself from the payment of rent. Jackson v. Eddy, 12 Mo. 209; Smith v. Thurston, 19 Mo. App. 48; O'Neil v. Manget, 44 Mo. App. 279.

*House, Manard, Allen & Johnson* for respondent.

(1) The fact that there were roaches in the kitchen of the demised dwelling house did not justify the lessee in abandoning the premises, or relieve him of the payment of rent therefor. Meade v. Montrose, 173 Mo. App. 722, 160 S. W. Rep. 11; Roth v. Adams, 185 Mass. 341; 1 Tiffany Landlord & Tenant, par. 86, pp. 556, 568; Jacobs v. Morand, 59 Misc. 200, 110 N. Y. Supp. 208; Pomeroy v. Tyler, 9 N. Y. St. Rep. 514; Truesdell v. Booth, 4 Hun. 100; Vanderbilt v. Persse, 3 E. D. Smith, 428 (N. Y.); Hart v. Windsor, 12 Mees. & W. 68; Fisher v. Lighthall, 4 Mackey, 82, 54 Am.

Rep. 258. (2) The fact that the furnace pipes in the leased premises became defective did not amount to a constructive eviction in the absence of an agreement of the lessor to repair. Graff v. Brewing Co., 130 Mo. App. 618; Roberts v. Cottey, 100 Mo. App. 500; Burnes v. Fuchs, 28 Mo. App. 279; Glenn v. Hill, 210 Mo. 291; Huggins v. Jasper, 134 Mo. App. 1. Appellant having remained in possession of the premises for more than a year after the conditions alleged to constitute a constructive eviction had arisen, waived the right to repudiate the lease therefor. Heilbrun v. Aaronson, 116 N. Y. Supp. 1096; Kent v. Ward, 111 N. Y. Supp. 743; Seaboard Realty Co. v. Fuller, 33 Misc. Rep. 109; 11 Am. & Eng. Ency. of Law (2 Ed.), 480.

TRIMBLE, J.—Suit for rent by a landlord upon a written lease of an unfurnished house for a term of two years and six months from November 1, 1910. The lease provided that "in case of abandonment or surrender of premises before termination of this lease, the obligation to pay rent shall continue." Defendant lived in the house and paid the rent up to February 1, 1912, and then moved out, and the house remained unoccupied during the months of February and March of that year. The suit is for the rent of those two months.

Defendant's claim is that he was constructively evicted. The grounds of this claim are that the kitchen was infested by water bugs or cockroaches to such an extent that they contaminated the cooking utensils and required all food to be kept in sealed jars, and that the furnace pipes sagged and became defective so that the heat was not conducted to the house but leaked out into the basement and the house could not be heated sufficiently to be comfortable.

There was no clause in the lease requiring the house to be in any particular condition. On the con-

trary, the lease provided "that the first party has rented to said second party *in the present condition thereof* the following described property, etc." Nor was there any agreement on the part of the landlord to repair. Plaintiff's offer to prove the presence of cockroaches and the defective condition of the pipes was objected to and the objection was sustained and such evidence was excluded, and at the close of all the evidence the court directed a verdict for the sum demanded, $200. Defendant appealed.

There being nothing in the contract stipulating that the house should be free from vermin or in a good state of repair, and there being no statute in force on the subject, the rights and liabilities of the parties are to be determined and governed by the common law which seems to regard the rights of the landlord with more concern than those of the tenant. Consequently, as said by 1 Tiffany on Landlord & Tenant, sec. 86, page 556, "It is agreed by the authorities at the present time that, as a general rule, there is no obligation on the part of the lessor to see that the premises are, at the time of the demise, in a condition of fitness for use for the purpose for which the lessee may propose to use them. A lessee, like the purchaser of a thing already in existence, is presumed to take only after examination. The maxim *caveat emptor* applies, and if he desires to protect himself in this regard he must exact of the lessor an express stipulation as to the condition of the premises." Further on in the same section, page 557, the author says: "Since the tenant thus takes the premises as they are, with all their imperfections, he cannot assert a right to rescind the lease, or, which is in practical effect the same thing, defend against the claim for rent, on the ground that the premises are in unsatisfactory condition or are unsuitable for his purpose." And then the author goes on to say "so it has been held that it is no defense to an action for rent . . . that a house leased (unfur-

nished) was so infected with bugs as to be uninhabitable, that the premises lacked a proper drain, that they were uninhabitable owing to a noxious stench, that the plumbing was defective, etc.'' As between landlord and tenant, the rule is well settled that, in the absence of an express agreement, a tenant takes the property in the condition in which he finds it. [Graff v. Brewing Co., 130 Mo. App. 618, 1. c. 622.] In the absence of a covenant, the landlord is under no obligation to repair the premises, and, as to his tenant, the landlord is only liable for acts of misfeasance and not of nonfeasance, where there are no contractual obligations between them requiring the landlord to remedy the defect complained of. [Roberts v. Cottey, 100 Mo. App. 500, 1. c. 503.] The tenant takes the premises as he finds them ''for there is no warranty implied in law on the part of the landlord that they are tenantable, or even reasonably suitable for occupation, and the rule of *caveat emptor* applies. [Stevens v. Pierce, 151 Mass. 207; Bertie v. Flagg, 161 Mass. 504.]'' [Roth v. Adams, 185 Mass. 341, 1. c. 345.]

It is true there is a rule of law that if there are hidden defects or dangers known to the landlord and unknown to the tenant and which he could not discover by reasonable inspection, the landlord, on the ground of negligence, will be liable to the tenant for any injury resulting to the lessee from such defects or dangers. And in 1 Taylor on Landlord & Tenant, 223, it is said that upon the discovery of such defects, known to the lessor and not revealed, and unknown to the lessee and which a careful examination would not detect, and which may be dangerous to the occupant and render the premises untenantable it is generally held that the tenant will be justified in abandoning them. The authorities cited, however, in support of the text were Leonard v. Armstrong, 73 Mitch. 577 (in which state the rule is different from that in other states), Dennison v. Grove, 52 N. J. Law 144 (in which there was

not a mere failure to disclose the defect but a positive fraudulent misrepresentation of the fact by the landlord), and Daly v. Wise, 132 N. Y. 306, in which the court held that in a lease containing no covenant for the place to be in good condition, there is no implied covenant that it is without defects rendering it unfit for a residence, but that on account of the fraudulent misrepresentations of the landlord that the secret defects did not exist, the tenant was not liable for rent subsequently accruing. So that the authorities cited do not support the apparently broad statement of the text. And this seemingly broad statement is qualified in the very next sentence where it says the lessor is not liable to a lessee for the act of an agent in withholding information as to the defective condition of the premises unless there is such a concealment as to amount to fraud or deceit. Hence it does not follow that the inconveniences complained of in this case will work a constructive eviction. They will not do so unless there was a fraudulent misrepresentation or deceit on the part of the landlord in regard to them. While a tenant may be evicted by the conduct of the landlord in creating or permitting the existence of nuisances in or about the demised premises, yet, the landlord must in some way be responsible for such nuisance, that is, by some act of his he must have produced or brought it about, and the nuisance must be of a serious character so intolerable as to involve a deprivation of the use of the leasehold. [11 Am. & Eng. Ency. of Law 474.] As said in Truesdale v. Booth, 4 Hun. (N. Y.) 101, "wrongful acts of the landlord which are mere negligence or trespass do not bar the rent; although the rule is otherwise where the landlord creates a nuisance near the premises, or is guilty of acts which preclude the tenant from the beneficial enjoyment thereof provided in such case the tenant shall abandon the premises by reason thereof. Vermin or noxious smells in and about the house do not con-

stitute eviction so as to justify the abandonment of
the premises by the tenant.''

In Vanderbilt v. Persse, 3 E. D. Smith (N. Y.)
428, it was held that a tenant is not evicted by reason
of such matters as bad smells in and about the prem-
ises, a stagnant pond near the place, the kitchen being
too hot with the stove in it, and vermin in the bed
rooms. ''To constitute a constructive eviction, there
must be an intentional and injurious interference by
the landlord which deprives a tenant of the beneficial
enjoyment of the demised premises, or materially im-
pairs such beneficial enjoyment.'' [Seaboard Realty
Co. v. Fuller, 67 N. Y. Supp. 147.] In Pomeroy v.
Tyler, 9 N. Y. St. Reports 514, the tenant claimed an
eviction on the ground that the rooms were overrun
with vermin, bedbugs, cockroaches, croton bugs and
red ants, but the court held that this did not amount
to an eviction. In the case of Jacobs v. Morand, 110
N. Y. Supp. 208, the evidence in behalf of the tenant
that the apartment, including the beds and closets and
all the rooms, were overrun with water bugs and bed-
bugs, and the suit for rent was dismissed on the ground
that the vermin constituted an eviction. The appellate
court held otherwise and reversed and remanded the
case.

In Fisher v. Lighthall, 4 Mackey 82, 54 Am. Rep.
258, the tenant claimed an eviction because the house
was unfit for habitation on account of sewer and il-
luminating gases escaping from the pipes and that it
was so badly infested with ants that food could not be
protected from them. The court held that this was
no defense in the absence of a covenant in the lease
that the property was fit for habitation, and said:
''Parties are to be left to make their own contracts,
and when they have done so the court will not under-
take to introduce new terms into a written contract.
. . . The law does not undertake to treat contract-

ing parties as requiring nurses.  We must apply here the ordinary rule which has always been understood to regulate the contracts of parties to letting a house, viz: that there is no implied contract or condition that the premises shall be habitable.''

In Hart v. Windsor, 12 Mees & W. 68, the tenant claimed an eviction because the house was so infected with bedbugs it could not be inhabited, and the jury found for defendant.  Notwithstanding, the court held that this was no defense and said ''there is no contract, still less a condition, implied by law on the demise of real property only, that it is fit for the purpose for which it is let. . . .  It is much better to leave the parties in every case to protect their interests themselves, by proper stipulations; and if they really mean a lease to be void by reason of any unfitness in the subject for the purpose intended, they should express that meaning.''

Even if the circumstances complained of are such as to justify the tenant in abandoning the property and in claiming a constructive eviction, he must do so in a reasonable time after the circumstances arise which give him the right to abandon, and if he fails to do so, he loses the right.  [11 Am. & Eng. Ency. of Law, 480; Heilbrun v. Aaronson, 116 N. Y. Supp. 1096; Seaboard Realty Co. v. Fuller, 33 Misc. Rep. 109, 67 N. Y. Supp. 146; Kent v. Ward, 111 N. Y. Supp. 743.] In the case at bar defendant remained in the premises for fifteen months after the conditions were discovered.  And there is no claim that the landlord fraudulently misrepresented the condition of the house.

As to the furnace pipes leaking, there is no claim that the plaintiff knew the pipes were defective or that he misrepresented their condition or made any representation in regard to them.  They began to give way after defendant had been in the premises.  In the absence of an express agreement the lessor is under no obligation to repair the leased property whether the

need for repairs existed at the time of the leasing or arose afterwards.  [Burnes v. Fuchs, 28 Mo. App. 279; Graff v. Brewing Co., 130 Mo. App. 618; Roberts v. Cottey, 100 Mo. App. 500; Glenn v. Hill, 210 Mo. 291, l. c. 296.]

The judgment is affirmed.  All concur.