EMILY D. LEECH, d. b. a., *v.* EVELYN HUSBANDS, p. b. r.

(*November* 11, 1930.)

RICE and HARRINGTON, J. J., sitting.

*J. Paul Green* for plaintiff below, respondent.

*John J. DeLuca* for defendant below, appellant.

Superior Court for New Castle County, No. 156, November Term, 1929.

HARRINGTON, J., delivering the opinion of the court:

This is an action of debt for rent and whatever the rule may be in a short term lease of a furnished house or apartment where immediate occupancy is intended, the rule of *caveat emptor* ordinarily applies between landlord and tenant and there is no implied covenant, or even a warranty, in a lease of an unfurnished house or apartment that it is either reasonably fit or safe for habitation, or that it will remain in that condition. *Cowen v. Sunderland*, 145 *Mass.* 363, 14 *N. E.* 117, 1 *Am. St. Rep.* 469; *Griffin v. Freeborn*, 181 *Mo. App.* 203, 168 *S. W.* 219; *Daly v. Wise*, 132 *N. Y.* 306, 30 *N. E.* 837, 16 *L. R. A.* 236; *Bowe v. Hunking*, 135 *Mass.* 380, 46 *Am. Rep.* 471; *Fisher v. Lighthall*, 4 *Mackey* (*D. C.*) 82, 54 *Am. Rep.* 258; *Murray v. Albertson*, 50 *N. J. Law* 167, 13 *A.* 394, 7 *Am. St. Rep.* 787; *Tiffany on L. & T.*, vol. 1, *page* 556; 36 *C. J.* 43, 47; 4 *A. L. R.* 1453.

It, therefore, necessarily follows that in the absence of fraud, there is no implied covenant or representation of any character that a house or apartment is free from vermin, bugs, or disease germs, and that such conditions should usually be guarded against by express covenants. *Hart v. Windsor*, 12 *Mees. & W.* 68; *Naumberg v. Young*, 44 *N. J. Law* 331, 43 *Am. Rep.* 380; *Cutter v. Hamlen*, 147 *Mass.* 471, 18 *N. E.* 397, 1 *L. R. A.* 429; 36 *C. J.* 47, citing *Brown v. Delmos*, 27 *B. C.* 471.

The defendant concedes that there is no express covenant as to the habitable condition of the demised premises in this lease, but contends that she is excused from the payment of rent after she left the apartment:

1. Because the execution of the lease was procured by fraud on the part of the plaintiff and by reason of that fact she subsequently rescinded the contract.

2. Because the failure of the plaintiff to remedy conditions existing in the apartment, making it uninhabitable and dangerous to health, amounted to a constructive eviction therefrom.

She also contends that these defences have been properly pleaded and the demurrer raises that question.

The fraud relied on in the first plea is a concealment of the fact that the premises at the time of the execution of the lease "were infested with vermin, bugs and disease germs so as to render the health of the occupants * * * and to render said apartment unfit for habitation"; such conditions, though known to the plaintiff, being unknown to the defendant and not being "apparent or easily discoverable on the inspection of the apartment."

The failure to disclose known material facts may, undoubtedly, constitute fraud in some cases (13 *C. J.* 384; 35 *C. J.* 1161; 4 *A. L. R.* 1460, 1469; *Steele v. Kinkle*, 3 *Ala.* 352; *Fleming v. Slocum*, 18 *Johns. (N. Y.)* 403, 9 *Am. Dec.* 224; *Crawford, et al., v. Bertholf*, 1 *N. J. Eq.* 458; *Wilde v. Gibson*, 9 *Eng. Repr.* 897), but there must not only be a duty to speak in the particular case (27 *C. J.* 31; 4 *A. L. R.* 1461, 1469; *Jordan & Son v. Pickett*, 78 *Ala.* 331), but like misrepresentations the concealment must, also, be with the intent to deceive the other party and to induce him to act to his detriment. *Jordan & Son v. Pickett*, 78 *Ala.* 331; *Wilde v. Gibson*, 9 *Eng. Repr.* 897; 26 *C. J.* 1123; 27 *C. J.* 34.

Generally speaking, neither party to a contract of any kind is bound to disclose facts known to him which might prevent the other party from entering into such contract, and where no confidential relation exists between them actual misrepresentations are, therefore, usually necessary to constitute fraud. *Pickering v. Day*, 3 *Houst.* 474, 95 *Am. Dec.* 291; 13 *C. J.* 383.

There are, however, exceptions to this rule; and among other exceptions there is an obligation imposed by law that no person, with knowledge of the conditions and the probable result, has the right to induce another person to put himself into a position of danger where such danger was neither known to nor readily apparent to such other person. *Tiffany on Landlord & Tenant, vol.* 1, 562, *etc.;* 4 *A. L. R.* 1460, *etc.;* 13 *C. J.* 384.

While the cases are not wholly in accord as to the ground on which the remedy is based, generally speaking, at least, a failure to observe this rule would seem to constitute negligence and when

it results in injury the guilty party may, therefore, be sued in an action on the case. This principle is applied in the sales of dangerous or noxious articles, the properties of which are known to the seller but not to the buyer and which are not readily discoverable by him (*Cowen v. Sunderland*, 145 *Mass.* 363, 14 *N. E.* 117, 1 *Am. St. Rep.* 469; *French v. Vining*, 102 *Mass.* 132, 3 *Am. Rep.* 440; *Carter v. Towne*, 98 *Mass.* 567, 96 *Am. Dec.* 682; *Stevens v. Pierce*, 151 *Mass.* 207, 23 *N. E.* 1006; *Huset v. J. I. Case, etc., Co. (C. C. A.)*, 120 *F.* 865; *Tiffany on Landlord & Tenant, vol.* 1, *page* 562, *etc.*; 24 *R. C. L.* 507. See, also, *Clark v. Army, etc., Society*, [1903] 1 *K. B.* 155); and to cases where a person knowing the facts but not disclosing them expressly or impliedly invites another person to go on his premises, though dangerous spring guns or traps are concealed there. *Cowen v. Sunderland*, 145 *Mass.* 363, 14 *N. E.* 117, 1 *Am. St. Rep.* 469; *Minor v. Sharon*, 112 *Mass.* 477, 17 *Am. Rep.* 122; *Tiffany on L. & T., vol.* 1, *page* 564.

It is, also, applied to cases where a landlord, knowing the conditions, but without telling the tenant, leases premises which he knows are infected with smallpox or some other concealed or dangerous disease germ. *Cutter v. Hamlen*, 147 *Mass.* 471, 18 *N. E.* 397, 1 *L. R. A.* 429; *Minor v. Sharon*, 112 *Mass.* 477, 17 *Am. Rep.* 122; *Cesar v. Karutz*, 60 *N. Y.* 229, 19 *Am. Rep.* 164. See, also, *Bowe v. Hunking*, 135 *Mass.* 380, 46 *Am. Rep.* 471; *Stevens v. Pierce*, 151 *Mass.* 207, 23 *N. E.* 1006.

If the duty to disclose known concealed danger exists and is the basis of a right of action in tort when damage results from a failure to perform that duty, there is no reason why the same duty to disclose such dangers should not exist where a contract is contemplated; and if the execution of such contract is finally induced by the intentional failure to disclose such dangers it would seem to constitute fraud. 24 *R. C. L.* 333; *Tiffany on L. & T., vol.* 1, 566.

Though considering the question from the opposite angle, *Tiffany on Landlord & Tenant, supra*, aptly says:

"What is fraud as regards the lessee, when considered as a person with whom the lessor is entering into contractual relations, is negligence as regards the lessee when considered as a person whom the lessor is inducing to dwell upon or otherwise utilize the dangerous premises."

The statement sometimes appears in the textbooks that the failure to disclose known dangers so concealed that they are not discoverable by the exercise of ordinary diligence constitutes fraud in law, even in the absence of any actual fraudulent intent (24 *R. C. L.* 333), but statements of that character can only relate to questions of proof and can have no application, whatever, to questions of pleading.

While, therefore, a fraudulent intent may be shown by a failure to disclose such dangers, if known, some express or implied allegation of fraud is essential in cases of fraudulent concealment, as well as in cases of fraudulent misrepresentations.

As in all other cases of fraud, the right to rescind a contract (*Mackenzie Oil Co. v. Omar Oil & Gas Co.,* 4 *W. W. Harr.* (34 *Del.*) 435, 154 *A.* 883; 13 *C. J.* 611) for the concealment of material facts, must, however, be exercised in a reasonable length of time after the discovery of the fraud. *Donian v. Fox,* 170 *Ill. App.* 41; 13 *C. J.* 616; *Mackenzie Oil Co. v. Omar Oil & Gas Co.,* 4 *W. W. Harr.* (34 *Del.*) 435, 154 *A.* 883.

Applying these principles to the first plea there are three questions to consider:

1. Does it allege the existence of concealed dangers, known to the plaintiff, with sufficient particularity?

2. If it does, does it sufficiently appear that there was an intent to deceive defendant and to induce him to execute the lease in question by the failure to disclose such dangers?

3. If a fraudulent concealment is sufficiently alleged, does it, also, allege facts indicating that the contract was rescinded by the defendant within a reasonable length of time after the discovery of the fraud?

The plea alleges that the apartment was "infested with vermin, bugs and disease germs so as to endanger the health of the occupants and to render" it "unfit for habitation."

It lacks particularity as to the kind of "vermin, bugs and disease germs" with which it was infested, but this would seem to be merely a defect in form that could only be taken advantage of by special demurrer.

The allegations as to the existence of dangers to health rendering the apartment unhabitable would seem to apply to "vermin" and "bugs" as well as to "disease germs," and for the purpose of this argument the presence of all of such dangers and the extent of them are admitted by the demurrer. Whether proof, if required, could substantiate these allegations need not be considered here.

The plaintiff claims that while fraud is relied on, there is no specific allegation of a fraudulent intent in failing to disclose the dangerous condition of the property when the lease was executed. The first plea, however, not only alleges that this condition was known to the plaintiff and was not readily discoverable by the defendant, but further alleges that the plaintiff did not tell the defendant about such dangers.

Where fraud fairly or necessarily appears from the facts set forth, it need not be specifically alleged, and we think the allegations of this plea are within that rule. 27 *C. J.* 30; *Grove v. Rentch*, 26 *Md.* 367; *Sallies v. Johnson*, 85 *Conn.* 77, 81 *A.* 974, *Ann. Cas.* 1913A, 386.

While it does, therefore, appear that a contract was procured by fraud and that by reason of that fact it was subsequently rescinded by the defendant, does it also appear that she exercised that right in a reasonable time after she had discovered the fraud?

It is not necessary to plead the numerous details that might be considered at the trial in determining what was a reasonable time (*Chitty on Pleading, vol.* 1, 225; *National Bank of Del. v. Lindsay*, 2 *Boyce* 83, 78 *A.* 407), but some allegation from which it fairly appears that the defendant exercised that right in a reasonable time is essential to the validity of her plea.

The exact date when the fraud relied on by the defendant was discovered by her does not appear, but she must have known it "shortly after" she moved into the apartment as that is when she notified the defendant of the conditions on which the allegation of fraud is based.

The plea alleges that she vacated the premises covered by the lease about June 1, 1929, and that she moved in on December 15,

1928. It further alleges that she occupied the apartment for "six months or thereabouts" before she vacated it.

She claims, however, that any adverse inferences that might be drawn from this allegation are rebutted by the allegation that the plaintiff promised to remedy the conditions complained of. This promise is also alleged, however, to have been made "shortly after" she took possession.

The words "shortly after" are indefinite both as to when the fraud was discovered and when the plaintiff promised to remedy the conditions complained of. Every inference is, however, against the pleader and when this allegation is considered in connection with the allegation that the defendant remained in possession "six months or thereabouts," already referred to, it would seem that the plea does not allege a rescission of the contract sued on in a reasonable time after the discovery of the fraud, and the demurrer to such plea must, therefore, be sustained.

*National Bank of Del. v. Lindsay*, 2 *Boyce* 83, 78 *A.* 407, merely involved certain particular rules of pleading applicable to bills and notes (*Greenleaf on Ev., vol.* 2, § 197; *Daniels on Neg. Instr.,* §§ 1047, 1049) and, therefore, insofar as it may seem to be inconsistent with this case does not govern it.

The defendant concedes that the second plea is not based on an actual forcible ouster or eviction from the demised premises, but claims that it alleges facts constituting a constructive eviction therefrom, and that she is, therefore, excused from the payment of the subsequent rent claimed by the plaintiff.

A constructive eviction is now, undoubtedly, recognized by the law, but what facts will justify the application of that principle and the abandonment of the demised premises, is by no means clear in all cases.

Generally speaking, in order to constitute such an eviction, there must be some wrongful or improper act on the part of the landlord, without the consent of the tenant, of such a grave and permanent character as to indicate an intent on his part to deprive the tenant of the means of the use and beneficial enjoyment of the demised premises, and by reason of which act the tenant is in effect

forced to abandon such premises. *Upton v. Townsend,* 17 *C. B.* 30; *Smith v. Raleigh,* 3 *Camp.* 513; *Royce v. Guggenheim,* 106 *Mass.* 201, 8 *Am. Rep.* 322; *Hopkins v. Murphy,* 233 *Mass.* 477, 124 *N. E.* 252, 13 *A. L. R.* 816; *Smith v. Billany,* 4 *Houst.* 113; *Tiffany on Landlord & Tenant, vol.* 2, § 185; 36 *C. J.* 261; 4 *A. L. R.* 1461.

A mere trespass, or some other trivial and temporary, though unwarranted act, not indicating an intent to compel the tenant to vacate the demised premises, does not, however, constitute an eviction. *Upton v. Townsend,* 17 *C. B.* 30; *Rice v. Dudley,* 65 *Ala.* 68; *State v. McClay,* 1 *Harr.* 520; *Peterson v. Edmonson,* 5 *Harr.* 378; *Tiffany on Landlord & Tenant, vol.* 2, *pages* 1259, 1260; 36 *C. J.* 257, 262.

While there may be possible exceptions as a general rule the intent of the landlord to compel the tenant to vacate the premises need not be strictly proved but may be implied from his unwarranted acts. This is because a man must be presumed to intend the natural and probable consequences of any acts committed by him. *Skally v. Shute,* 132 *Mass.* 367; *Lumiansky v. Tessier,* 213 *Mass.* 182, 99 *N. E.* 1051, *Ann. Cas.* 1913E, 1049; *Tiffany on Landlord & Tenant, vol.* 2, *page* 1259; 36 *C. J.* 263; 16 *R. C. L.* 688.

When the unwarranted and improper acts done by the landlord are of such a serious and permanent character as to make further occupation and use of the premises unsafe, or, at least, accompanied with possible serious consequences to the health, or even life of the tenant or his family, and by reason of that fact he is forced to abandon them, it constitutes a constructive eviction within this rule. *Skally v. Shute,* 132 *Mass.* 367; *Waite v. O'Neil (C. C. A.),* 76 *F.* 408, 34 *L. R. A.* 550; *Sully v. Schmitt,* 147 *N. Y.* 248, 41 *N. E.* 514, 49 *Am. St. Rep.* 659; *Alger v. Kennedy,* 49 *Vt.* 109, 24 *Am. Rep.* 117; *Lathers v. Coates,* 18 *Misc. Rep.* 231, 41 *N. Y. S.* 373.

Strictly speaking, in order to constitute an eviction, some wrongful and intentional act of an affirmative character, followed by abandonment of the demised premises, would seem to be essential. This is because, originally at least, a mere failure to act did

not constitute a breach of the covenant for quiet enjoyment, whether such covenant be express or implied. *Tiffany on L. & T., vol. 2, pages* 1271, 1272; *Huber v. Ryan,* 26 *Misc. Rep.* 428, 56 *N. Y. S.* 135; *Smith v. Billany,* 4 *Houst.* 113.

The courts have, however, very generally lost sight of this principle and have frequently held that abandonment of the demised premises, when caused by a nuisance on adjacent premises owned and possessed by the landlord and rendering such demised premises unfit for habitation, will constitute an eviction therefrom; and this is true, whether such nuisance is actually maintained by the landlord, or whether he merely negligently fails to abate it. *Alger v. Kennedy,* 49 *Vt.* 109, 24 *Am. Rep.* 117; *Jackson v. Eddy,* 12 *Mo.* 209; *Dyett v. Pendleton,* 8 *Cow.* (*N. Y.*) 727; *McCurdy v. Wyckoff,* 73 *N. J. Law* 368, 63 *A.* 992; *Tiffany on L. & T., vol.* 2, 1281, 1282. This general principle has been applied in this state. *Smith v. Billany,* 4 *Houst.* 113; *Rowbotham v. Pearce,* 5 *Houst.* 135.

In *Smith v. Billany, supra,* the court said:

"Where the landlord rented a portion of his house to a respectable family, retaining the other portion in his own possession, and afterward received visits in it from disreputable and profligate women in such a manner and who were guilty of such riotous and outrageous disturbances, as to render it intolerable for a decent family to reside or remain in the portion rented by the tenant, and who for that reason left the premises, it was held to be equivalent to, and to constitute in effect, an eviction of the tenant."

In the same case the court also said:

"But there must be an actual entry and an expulsion, or exclusion by the landlord of the tenant from the premises, or some such intolerable annoyance and disturbance by the former of the possession of the latter, as would deprive him of the beneficial enjoyment of them, to have the effect in law to suspend or extinguish the landlord's right to recover the rent."

A broader application of the rule was, however, made in *Alger v. Kennedy,* 49 *Vt.* 109, 24 *Am. Rep.* 117, where certain portions of a building, including a basement, were leased to the defendant. The building contained a sub-cellar, which was not included in the lease and the existence of which was not readily discoverable and was, in fact, not known to the tenant. By reason of the negligence of the landlord in failing to keep the drains in proper condition, this sub-cellar had been allowed to become more or less filled with foul

and smelly water. This condition continued after the tenant took possession and naturally seriously affected the habitable condition of the premises rented by him. The landlord failed to abate the nuisance so the tenant finally abandoned the demised premises and refused to pay any further installments of rent.

In holding that the failure of the landlord to remedy the conditions above referred to on adjacent premises in his possession justified the tenant in moving out, the Court said:

"Any act or default of the lessor that renders the tenement such as endangers the life or health of the occupants, may be treated * * * as an eviction. * * *"

Some courts have gone even further than this and have held that a continued failure to perform a covenant to furnish elevator service, heat or power, rendering the demised premises decidedly less desirable for the purposes for which they were leased, may, also, justify their abandonment and constitute a constructive eviction therefrom. *Brown v. Holyoke Water-Power Co.*, 152 *Mass.* 463, 25 *N. E.* 966, 23 *Am. St. Rep.* 844; *Harmony Co. v. Rauch,* 64 *Ill. App.* 386; *Ardsley Hall Co. v. Sirrett (Sup.),* 86 *N. Y. S.* 792; *Barnard Realty Co. v. Bonwit,* 155 *App. Div.* 182, 139 *N. Y. S.* 1050; *Tiffany on L. & T., vol.* 2, 1271; *Russell v. Olson,* 22 *N. D.* 410, 133 *N. W.* 1030, 37 *L. R. A.* (*N. S.*) 1217, *Ann. Cas.* 1914B, 1069; 36 *C. J.* 265; 4 *A. L. R.* 1461, etc.

To what extent that rule would be applied in this state need not, however, be considered here.

But it must be remembered that an essential element of a constructive eviction is that the landlord must have been in fault in some matter constituting a serious interference of á more or less permanent character with the habitable condition of the demised premises. The mere fact, therefore, that such premises have for some cause become uninhabitable after the tenant has taken possession and have been abandoned by him, if such condition was not in any sense caused by an intentional wrongful act, or a negligent failure of the landlord to act, in violation of some legal duty owed by him to the tenant, will not constitute a construc-

tive eviction. *Hopkins v. Murphy,* 233 *Mass.* 477; 124 *N. E.* 252, 13 *A. L. R.* 816; *Majestic Hotel Co. v. Eyre,* 53 *App. Div.* 273, 65 *N. Y. S.* 745; *Sully v. Schmitt,* 147 *N. Y.* 248, 41 *N. E.* 514, 49 *Am. St. Rep.* 659; *Marks v. Dellaglio,* 28 *Misc. Rep.* 539, 59 *N. Y. S.* 509; *Humes v. Gardner,* 22 *Misc. Rep.* 333, 49 *N. Y. S.* 147; *Diehl v. Watson,* 89 *App. Div.* 445, 85 *N. Y. S.* 851; 36 *C. J.* 265; 16 *R. C. L.* 686.

What would constitute a constructive eviction is, therefore, usually a question of fact for the jury, though with proper instructions from the court in accordance with the principles above stated. 36 *C. J.* 1018; *Sanderson v. Mayor of Tweed,* [1884] 13 *Q. B. Div.* 547; *Bud Scott v. Daniel,* [1902] 2 *K. B.* 351.

In this case, however, whether the particular facts alleged can constitute an eviction is a question of law for the court to determine. As in the first plea, this question is before us on general demurrer, and the remarks heretofore made as to the lack of particularity in the bare allegation that the demised premises were infested with vermin, bugs and disease germs, are equally applicable here.

Perhaps we might state that applying the above principles in the absence of an express covenant on the question, in most cases the existence of vermin and bugs in an unfurnished dwelling house must be met by the application of the usual appropriate household remedies by the tenant. *Hart v. Windsor,* 12 *Mees. & W.* 68; *Griffin v. Freeborn,* 181 *Mo. App.* 203, 168 *S. W.* 219; *Truesdell v. Booth,* 4 *Hun* (*N. Y.*) 101; *Pomeroy v. Tyler,* 9 *N. Y. St. Rep.* 514; *Fisher v. Lighthall,* 4 *Mackey* (*D. C.*) 82, 54 *Am. Rep.* 258; *Hopkins v. Murphy,* 233 *Mass.* 477, 124 *N. E.* 252, 13 *A. L. R.* 816.

At a first glance, the constructive eviction rule would seem to have been very much extended in some states, particularly in New York, when apartments or tenement houses have become so infested with vermin and bugs that they could not possibly be exterminated by the efforts of one tenant.

A more careful reading of the cases, however, would seem to indicate that the application of the rule in New York, at least, is based on the theory that the landlord has negligently permitted a

nuisance to exist on other portions of the same premises remaining in his control, and by reason of that fact has seriously affected the habitable condition of that portion of them demised to the tenant. 14 *A. L. R.* 1463; *Taber v. Van Pelt (Sup.)*, 149 *N. Y. S.* 487.

It must be conceded that the allegations in this case, as to uninhabitable and unhealthy condition of the apartment occupied by the defendant applies to both "vermin" and "bugs" as well as to "disease germs," and that if such conditions are permitted to continue they might be followed by more serious consequences than in the ordinary case where the leased premises are simply infested with vermin and bugs which are not alleged to be dangerous to health.

That, however, does not affect the principle involved (*Fisher v. Lighthall*, 4 *Mackey* [*D. C.*] 82, 54 *Am. Rep.* 258); and measured by the rules above stated this plea does not allege facts constituting an eviction of the tenant by the owner.

We have already called attention to the fact that there is no implied covenant that a house or apartment either is or will remain in a habitable condition, or that it is even safe for occupancy, and the facts alleged in this plea do not show that the plaintiff intentionally failed to perform any contractual duty or any other legal duty whatever owed by her to the defendant.

For the reasons above given, the demurrer is sustained as to both pleas.