ELEANOR HELM BRANDT and WALTER C. BRANDT, her husband, Plaintiffs, v. HAROLD C. YEAGER and BETTY YEAGER, a/k/a Elizabeth Yeager, his wife, and RALPH TRADER and LENA B. TRADER, his wife, Defendants.

*(March* 17, 1964.)

STIFTEL, J., sitting.

*Albert L. Simon* and *Wilfred J. Smith, Jr.,* for plaintiffs.

*Hugh L. Corroon* (of Berl, Potter and Anderson) for defendants.

Superior Court for New Castle County, No. 998, Civil Action, 1960.

STIFTEL, Judge.

This is an action for damages based upon the negligence of defendant landlords in failing to warn the injured tenant plaintiff, Eleanor Helm Brandt, of a latent dangerous condition or for their failure to make repairs properly on a cesspool. Defendants Harold C. Yeager and

Betty Yeager, his wife, moved for summary judgment.

In February of 1958, Eleanor Helm Brandt and her late husband entered into an oral lease with the Yeagers covering a single family home and back yard at 105 Wildel Avenue, Minquadale, Delaware. Approximately two years thereafter, on October 18, 1959, the plaintiff, Eleanor Helm Brandt, went into the yard to hang the family laundry, and while she was so engaged, the ground beneath her left foot opened, and plaintiff's left leg fell into the earth. As a result, plaintiff ruptured two intervertebral discs.

Prior to this tenancy, the premises were occupied by James A. Unsworth, his wife and daughter, Betty L. Revel. At that time, the landlords occupied a home next door to them. During the summer of 1957, Betty Revel's foot sank into the ground past her ankle when the earth in the back yard opened unexpectedly. Betty Revel indicates that her late father, James A. Unsworth, went to the Yeager home to report the incident, but she has no personal knowledge as to whether or not her father actually reported the matter to the Yeagers. A circular wire fence about two feet high and three or four feet in diameter was erected around the caved-in area by the late James A. Unsworth when no action was taken by the landlords to correct the condition. The Revel and Unsworth affidavits indicate that they vacated the premises on February 1, 1958, and that the cave-in occurred during the summer of 1957.

When plaintiff entered the premises on February 25, 1958, there was no fence present. In fact, it was not until January of 1962 that she learned that the late James A. Unsworth had erected a wire fence around a portion of the earth in the yard and that the fence had remained there until approximately February 1, 1958, when the

Unsworths vacated the premises.[1] However, in her deposition of November 11, 1960, plaintiff says she was told by her neighbors that a cave-in had occurred during the prior tenancy, although it does not clearly appear whether plaintiff was informed of this cave-in before or after her injury.[2] Defendants' affidavits recite that they had no knowledge of the existence of any latent dangerous condition at the time of the letting. They admit, however, that they lived next door to the Unsworths at the time the fence was erected.

During the winter of 1959, some stoppage occurred so that the cesspool on the premises leased by the Brandts did not function properly. The landlords had the cesspool cleaned within a short time after plaintiffs complained. Several months later, during the 1959 summer, a second cave-in occurred in the back yard, near the cesspool. The defendant landlords were notified. They did nothing. After a week or two, plaintiff's husband filled the hole. Plaintiff believed that this cave-in, as well as the third cave-in, were caused by the leakage or collapse of a terra cotta pipe leading from the house to the cesspool.

Prior to the second cave-in,[3] plaintiff had gone into the

---

[1]Statement made in affidavit of plaintiff dated November 6, 1962.

[2]In her deposition, the following appears (p. 11):
"A. Well, the people that lived there ahead of me, that was the reason they moved. Someone had fallen, the ground had given way with one of them, but they were lucky, they didn't get hurt.
"Q. Did the prior tenants tell you about this when you moved in?
"A. Well, the neighbors told me. I don't know, but the neighbors told me that that happened.
"Q. Where did they say it happened? Or did they?
"A. I really don't know. I never asked."

[3]For convenience, I shall refer to the cave-ins as the first, second and third. The first refers to the one which occurred when the Unsworths occupied the property. The second refers to the cave-in in the summer of 1959, and the third refers to the one on October 18, 1959, which caused plaintiff's injury.

yard frequently without incident. She had been accustomed to placing the clothes to dry at least twice a week and her husband and son never encountered any difficulty in mowing the lawn in this area. After the second cave-in, they avoided the cesspool area where the cave-in had occurred.

When the tenants moved into the premises, nothing was said about repairs. However, the landlords have caused the premises to be repaired on certain occasions, had often promised to make repairs after the premises were occupied, but failed to do so, and had on still other occasions refused to repair.

Plaintiff argues that summary judgment should be denied for two reasons: First, she claims the case contains a material issue of fact as to whether defendants neglected their duty to warn plaintiff of a latent dangerous condition; second, she claims an issue of fact is presented on the question of negligence of the defendants in cleaning the cesspool eight months before the accident.

This was an oral lease. No agreement had been entered into between the parties in reference to repairs. The landlords had caused certain repairs to be made on the premises during the tenancy but this cannot be construed as any obligation on the part of the landlords to make any other repairs. *Shegda v. Hartford Conn. Trust Co.,* 131 Conn. 186, 38 A.2d 668, 670; 3A Thompson on Real Property, 1959 Replacement, § 1230, pp. 132, 140.

Normally, there is no implied covenant that leased premises are safe for habitation and use or will remain in that condition. *Leech v. Husbands,* 4 W.W.Harr. 362, 152 A. 729; *Grochowski v. Stewart,* 3 Storey 330, 169 A.2d 14, 16. As a general rule, however, a landlord may be held responsible for injuries occurring to his tenant

where he knew or had reason to believe a latent defect existed at the time of the letting, and failed to disclose or concealed such information from the tenant; provided, however, that the tenant did not know or have reason to believe that such a condition existed. *Shegda v. Hartford Conn. Trust Co., supra,* 38 A.2d at p. 670; *Keegan v. G. Heilman Brewing Co.,* 129 Minn. 496, 152 N.W. 877, 878, L.R.A.1916F, 1149; see, 32 Am.Jur., "Landlord and Tenant", § 671; Restatement of Torts, § 358. Normally, the burden is upon the tenant to allege and prove an absence of knowledge of the latent defect in order to take the case out of the general rule of "caveat emptor". See, *Masterson v. Atherton,* 149 Conn. 302, 179 A.2d 592, 595.

The landlords claim that they knew nothing about the first cave-in which occurred when the Unsworths occupied the premises. However, the inferences point to their knowledge of the first cave-in. First of all, they lived next door to the Unsworths and it is unlikely that they would not have seen the fence that surrounded the hole. As owners of the leased premises, it could reasonably be assumed that they would have made inquiry. Furthermore, the former tenants' affidavit indicated that the fence was present on the leased premises when they vacated them on February 1, 1958. A few days later, the present plaintiff moved into the same premises and the fence was not there. It can reasonably be assumed that the defendants either removed the fence themselves or caused it to be removed during the interim. On these facts, a satisfactory inference is raised of the knowledge of the first cave-in and thus a possible dangerous condition which the landlords were obligated to disclose to the tenants when they let the premises.

Defendants argue that plaintiff should not be entitled to maintain her action because she had knowledge

of the first cave-in when she moved into the premises. The plaintiff states, however, that the record does not satisfactorily demonstrate this knowledge on her part. In fact, the tenant states in her affidavit that she first learned of the fence around the first cave-in in 1962, years after she had leased the premises, and that furthermore, her testimony did not place the date she learned about the first cave-in. Although the question was clear, plaintiff's answer to the question appears partially unresponsive (see footnote 2). Thus, for the purposes of this motion, I must assume that the tenant did not have knowledge of the first cave-in at the time of the letting.

■ However, a tenant should not be entitled to hold his landlord responsible for subsequent injuries based on the failure to disclose a latent defect at the time of the letting or thereafter if the tenant subsequently obtains information about the premises which ordinarily would require him to investigate the condition of the premises. 32 Am.Jur., "Landlord and Tenant", § 671, p. 542; 1 Anno. Cas. 680. In the instant case, the plaintiff and her late husband knew of the presence of the cesspool. At the time of the accident, they had knowledge of the second cave-in; *Manes v. Hines & McNair Hotels,* 184 Tenn. 210, 197 S.W.2d 889, 890; and apparently knew that the cause was a leaking terra cotta pipe which connected with the cesspool. Furthermore, plaintiff states that her husband had indicated to her that the third cave-in was also due to a leaking terra cotta pipe.[4]

---

[4]In plaintiff's deposition, the following appears (p. 13):

"Q. Have you any idea at all what caused the ground to give way? (Referring to the third cave-in)

"A. Well, a leaking cesspool—leaking terra cotta pipe, which my husband warned Mr. Yeager about with the other hole. He told him that's what it was.

"Q. Where is this terra cotta pipe?

█ █ It was the responsibility of plaintiffs to examine the premises after the second cave-in in order to ascertain whether they could be occupied safely. See, *Booth v. Merrian*, 155 Mass. 521, 30 N.E. 85, and also, 46 A.L.R.2d Anno. p. 1079. Instead of remedying what they thought was the defect, they merely filled in the hole created by the second cave-in without having the cesspool or the leaking terra cotta pipe examined. Under these circumstances, the tenant is not entitled to recover from the landlords for their failure to disclose information which the landlords had about the first cave-in. The landlords were not required to perform the useless task of informing the tenants of a dangerous condition of which the tenants had already been warned. Thus, the landlords have satisfactorily shown that the plaintiff is not entitled to recover on her theory of latent defect under the facts of this case.

█ Plaintiff alleges still another theory for recovery. She claims that these defendants were responsible for the third cave-in because they had caused the cesspool to be cleaned several months before the accident. They equate the cleaning of the cesspool with the law that normally applies to landlords making repairs whether or not they have the duty to do so. A landlord who voluntarily undertakes, at tenants' request, to make repairs on the

---

Note 4 continued—

"A. Well, it runs underground from the house into the cesspool, I guess.

"Q. Part of the cesspool?

"A. Yes.

"Q. Well, is the cesspool between the house and the hole that you fell in?

"A. Yes. Oh, wait a minute. Ask that again.

"Q. Where is the cesspool?

"A. Well, the cesspool is against that back fence."

leased premises may be liable for any injuries which may result to the tenants from the negligent manner in which the work is done. *Fulmele v. Forrest*, 4 Boyce 155, 86 A. 733; 3A Thompson on Real Property, § 1231, p. 150.

Assuming that cleaning of a cesspool can be considered as repairing, it would appear that the defendants have an obligation on this motion to demonstrate to the Court that the cleaning of the cesspool could not have caused the cave-in. The defendants have produced no expert evidence which would satisfactorily show this. Under these circumstances, the plaintiff's contention that the improper cleaning of the cesspool caused the third cave-in is not refuted. Since the record lacks this essential evidence, I must deny defendants' motion for summary judgment on this theory.

An appropriate order in conformity with the findings of this case will be entered.